ILLINOIS CENTRAL RAILROAD CO. *v.* WILLIAM GUESS.

1. RAILROADS. *Engineer. Knowledge of defects, etc. Switches.*

   An engineer who has knowledge of the incompetency of his fireman, and of defects in his engine, is thereby required to use greater care, in approaching stations with switches, to keep his train under control, to avoid accidents.

2. SAME. *Negligence. Contributory negligence.*

   If, in approaching a station, an engineer fails to exercise ordinary prudence, and is injured because of such failure, he cannot recover of the company because of its negligence in not equipping the train with air brakes and the engine with a proper headlight, and in having an incompetent fireman in its service.

3. SAME. *Rules of company.*

   The rule of the company, known to the engineer, that a switch signal imperfectly displayed, or the absence of a signal at its usual place, must be regarded as a danger signal, is binding on an engineer, and if he be injured because of a failure to observe the rule, he cannot recover from the company.

4. SAME. *Section 193, constitution of 1890; code 1892, § 3559, as amended (Laws 1896, p. 97).*

   Engineers and conductors in charge of dangerous or unsafe cars or engines, voluntarily operated by them, are excepted from the rule (sec. 193, constitution, and § 3559, code 1892, as amended by act of 1896), that knowledge by an employe of the defective or unsafe character or condition of machinery or appliances, shall be no defense to an action for an injury caused thereby.

FROM the circuit court of Lafayette county.

HON. EUGENE JOHNSON, Judge.

The facts are stated in the opinion of the court.

*Mayes & Harris,* for appellant.

We rely for a reversal of the case upon the testimony of the plaintiff himself, who was the only witness introduced in his behalf on the trial of the cause, our contention being that, con-

ceding that the fireman was incompetent, conceding that the engine did not have air brakes, and conceding that there were no lights at Pickens, still plaintiff shows by his own testimony that his injury was caused by his positive disobedience of a plain and well-established rule of the company in force at the time, and that by the observance of this known rule he could have avoided injury.

Further, we contend that the very facts of which the plaintiff complains as being negligent acts on the part of the company, were each and every one of them fully known to him at the time, and were additional reasons why he should have observed more particularly the rule, the disobedience of which by him caused his injury.

At the time of the accident plaintiff was on the lookout in order to shut off steam. He saw no light. He knew that the absence of a light was a danger signal, and meant to stop. He knew the rules of the company; was required to study them. He says: "I suppose if the light had been burning bright I could have seen it a quarter of a mile. If I could not see the light, if it was imperfect, I knew that the rules required me to stop." The track was perfectly straight for a mile and a quarter south of Pickens, and he saw no light. He did not stop, or try to stop; did not have his engine under control; took no sort of precaution until he was in one car's length, or thirty feet, of the end of the switch, at which time he saw that the switch staff was so turned as to display a red signal, which meant danger. We insist that public policy requires a strict observance of rules as to danger signals by engineers in charge of trains, and they cannot be excused for overlooking them.

For the plainest reasons we say the judgment of the court below should be reversed. We deem it unnecessary to cite authorities. The rule as to contributory negligence prevails in this state. That it does so prevail is announced at every term of this court, and where the facts plainly show the want of due care on the part of the persons complaining, this court uni-

formly denies the right of recovery. *Vicksburg, etc., Railroad Co.* v. *McCowan*, 62 Miss., 682; *Buckner* v. *Railroad Co.*, 72 Miss., 873.

*W. V. Sullivan*, for appellee.

It is submitted in behalf of the appellee, that he had the right, on entering the service of the railroad company, to assume that the rules by which he was to be governed would be observed by the company itself. Rule 1092, page 57 of the record, directed that the company should have a track watchman, whose duty it was to see that the switches were set and locked. Now, the company either had such fireman or it did not. This is a question of fact. Appellee claimed that there was none, and testified to the fact that he had seen none, and made inquiry to ascertain if there was one, and learned that there was none.

Again, it is said that, under rule 891 and rule 771 of the company, it is the duty of the station agent to look after the sidings and furnish the lights. He is in a different department of service, reporting to a different superior, and he failed to discharge his duty, both in looking after the sidings and seeing that the switch was closed, and in seeing that the danger signal was displayed, and, in this event, the company was liable under the provision of the constitution, § 193. It will not do to say that the station agent was employed in the same labor, or department of labor, as the engineer, nor will it do to say that the track watchmen, or anyone engaged in the construction of the track, was in the same department of labor. Each reports to a separate department, as shown by the rules copied in the record.

Again, the appellee had the right to assume that this kind of a train, starting out for the purpose of making fast time, carrying perishable freight, was equipped in the proper manner to be handled safely. That was but a duty the company owed to him. One of the necessary equipments of the proper

handling of such a train was air brakes, properly connected with the engine, which this train and engine did not have. The cars had the air brake provision, but the engine did not have the connecting pipes. Of this fact he was ignorant until he had left on the trip. In addition to this, it will be remembered that while he was required to handle twenty-nine cars on a fast schedule, only two brakemen were allowed him, which was manifestly insufficient to handle the twenty-nine cars without the assistance of air brakes. So it will not do to say that Guess should have stopped when he saw no light, and that its absence was, in itself, a danger signal, for the simple reason that he did not know, or could not know in the dark, exactly how near he was to Pickens. He had the right to rely upon the company's discharging its duty, and had the right to expect to see the light, either a white or red signal, and the company cannot plead its own default as contributory negligence on the part of the engineer.

It is submitted that the charges as asked and given for the plaintiff and the defendant fully and fairly presented the whole law as applicable to this case, and that the judgment should be affirmed.

Argued orally by *J. B. Harris*, for appellant, and by *W. V. Sullivan*, for appellee.

CALHOON, Sp. J., delivered the opinion of the court.

Mr. Guess sued the railroad company for damages for personal injuries, and the company pleaded the general issue, and gave notice of contributory negligence on his part. He recovered judgment, and the company appeals.

His own testimony is that he was an extra engineer of the company, and was called at Water Valley, at night, to make the round trip, with a train of freight cars, from that point to Canton and return. He ascertained that an incompetent fireman would be assigned him for the trip, and he objected, but

was told that he had to take that fireman or be discharged. He ascertained that the engine assigned him had no air brakes, as it was customary to have on through freight trains, like the one he was put in charge of. He ascertained, also, that the engine had an insufficient headlight. He had to run by a printed time schedule, requiring him to go only six miles per hour through certain towns, but this rule is not enforced at Pickens station, where the accident occurred. He had orders to have his train under control at telegraph offices, and Pickens was not a night telegraph office. He took his train to Canton, and, on the return trip, with the same engine and fireman, he had twenty-nine cars to pull—a heavy banana train—which train being a through train, with perishable goods, he had few stops to make, and did not have to stop at Pickens.

He arrived, going north, at Vaughan's station late, and had only eighteen minutes to make Pickens, but he was thirty minutes in making it, on account of the incompetency of his fireman, which made it necessary for him to occasionally leave his post, and fire the engine himself. If the engine had been provided with air brakes, the train could have been stopped in a much shorter space than without them. There were only two brakemen allotted to his train. If he had had air brakes, he says he could have stopped the train before any damage was done, "especially to myself." The distance between Vaughan's and Pickens is seven miles.

When he got on the engine at Water Valley everything seemed to be all right, and he had hardly time to investigate before he was compelled to leave, but the headlight did very little good, it being so defective.

When he got to Pickens, on the return trip, he was going a little less than thirty miles per hour, and was running on passenger train time. It was a foggy morning, and in the night time when the accident occurred, and he could hardly see at all by the headlight. Just about the time he got in a car length of the switch at Pickens, going north, he saw the switch was

wrong, blew for brakes and reversed his engine, but not in time, and it ran into the switch, jumped the track, and caused very serious injury to him.

There was no light at the switch, and no switchman at the station, and it was the duty of the company to have had both, the rules, with which he was familiar, being that a red light at a station, or the display of no light at all, meant danger, and required him to stop his train. He saw no light at Pickens, but the morning was too foggy for him to see it at the usual distance. The first intimation that he had of danger was when he saw the switch staff itself, about one car length from the open switch. He had vacated his seat in order to assist in firing, but had returned to his "lookout," and says he knew then he must have been right near Pickens. The track towards Pickens, from the south, is straight for one and one-half miles. He says he is familiar with the rule, No. 65, that a signal imperfectly displayed, or the absence of the signal at its usual place at the station, must be regarded as a danger signal.

Mr. Guess, when he started from Canton to Water Valley on the night of the accident, knew perfectly well the insufficiency of the headlight of his engine, and the absence of air brakes, and the incompetency of his fireman. This knowledge devolved upon him the duty to use the greater care in approaching stations with switches, to keep his train in hand to avoid accidents. Very manifestly he did not exercise ordinary prudence under the circumstances, developed by his own testimony. He knew that, in approaching the switch, it was his duty to look for the danger signal, and he knew that, if there was no light at all at such a place, it was his duty, under the rules of the company, to stop his train, and he so testified. It is immaterial how negligent the company was, so far as the facts of this case develop, because, with the exercise of ordinary prudence, there would have been no accident whatever.

Section 193 of the constitution, and also § 3559 of the code, brought forward in the amendment of March 11, 1896, ex-

pressly except engineers and conductors in charge of dangerous or unsafe cars or engines, voluntarily operated by them, from the provision that knowledge by an injured employee of the defective or unsafe character or condition of machinery or appliances, shall be no defense to an action for injury caused thereby. This exception, applying to engineers and conductors, was manifestly incorporated on grounds of public policy for the protection of human life.

This court has announced that employees—not conductors or engineers—must use ordinary care to avoid injury. *Buckner* v. *Railroad Co.*, 72 Miss., 873. Mr. Guess, an engineer, manifestly did not use such care to avoid it, and notwithstanding our sympathy for his suffering, we are compelled to

*Reverse and remand this case, and it is so ordered.*