YAZOO & MISSISSIPPI VALLEY RAILROAD CO. *v.* J. H.
WOODRUFF.

[53 South. 687.]

1. MASTER AND SERVANT. *Assumed risks. Knowledge of defective machin-
ery. Constitution* 1890, § 193. *Code* 1906, § 4056. *Common law.*

Under the common-law knowledge by an employee injured of the
defective or unsafe character or condition of any machinery, ways
or appliances voluntarily used by him was a defense to an action
for injury caused thereby.

2. CONSTITUTION 1890, § 193. *Code* 1906, § 4056.

While the Constitution of 1890, § 193, Code 1906, § 4056, provides
that knowledge of an employee of the unsafe character of ma-
chinery, etc., shall be no defense to an action for injury caused
thereby, this does not apply to conductors and engineers in charge
of dangerous or unsafe cars or engines voluntarily operated by
them as they are especially excepted and hence as to these the
common law applies.

3. Pleading.   *Assumption of risk.   Affirmative defense.*
  While the defense of assumed risks is an affirmative defense and
    should be pleaded, yet where this defense is developed by plain-
    tiff's own testimony in his efforts to make out his case, it can
    be availed of by defendant without being  specially pleaded.

Appeal from the circuit court of Wilkinson county. Hon. M. H. Wilkinson, Judge.

Suit by J. H. Woodruff against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals. The facts are fully stated in the opinion of the court.

*Mayes & Longstreet,* for appellant.

It is settled by decisions of this state, that a railroad employe is not entitled to recover for injuries resulting from a defect in a tool used by him in the customary manner, using the same, which was a new one, of a kind in general use by railroads, and had been procured of a reputable manufacturer, and was regarded as sound by the employe himself, a man experienced in the use of such tools. *Kent* v. *R. R. Co.,* 77 Miss. 494.

And in *Clisby* v. *Mobile, etc. R. R. Co.,* 78 Miss. 937, this court held that a railroad company is not required to have the safest and best known appliances; that it may provide those in common use, of approved pattern and in reasonably safe repair.

In *R. R. Co.* v. *Blockman,* 87 Miss. 192, a case much like the one at bar, it was held that a railroad company is not liable to an employe for purely accidental injuries. That case was one where an engineer whose locomotive had become stopped by the loss of a valve key while on a run, directed a fireman, subject to his control, to hold the light so that he could drive a file into the key-hole, thereby enabling the locomotive to do its work; and splinters flew from the file each time

he struck it with a hammer, one of them entering the fireman's eye, and injuring him.

In *Jones* v. *Y. & M. V. R. R. Co.*, 90 Miss. 547, it was held that where the machinery of the railroad company was of a kind in general use, approved by the experience of many railroads and neither defective nor unsafe, the company was not liable for a death resulting from its use, notwithstanding a promise to substitute other and safer machinery, which might have prevented the accident.

It is not necessary to array other authorities from other states, of which there are many, to these points. The law is settled by the adjudication of this court.

*The Defect in the Lubricator.*—It is claimed that there was a defect in this appliance, for the reason that the spiral guard was not sufficiently safe, etc. We have already argued out that question above. But there is this further point. For purposes of the argument, even conceding that proposition, still the plaintiff cannot recover, for the reason that by his own testimony he shows that he knew all about these appliances; that for years and years he had run engines fitted with the tubular lubricator and the spiral guard; that he had been a practical engineer for nineteen years; that he had been running this particular engine for five months; that he himself had put in this particular tube, and that it seemed to be all right, as he selected it out of a number of others; and he utterly fails to show that he had ever made any objection to the spiral guard, or evidenced any desire to have any other sort.

*Green & Green,* for appellee.

The effort of appellant to have this court reverse this cause because of the refusal of a peremptory instruction upon the ground of assumption of the risk, or the voluntary operation of dangerous or improper appliances, under section 193 of the Constitution, falls

under the condemnation of *Railroad* v. *Scraag,* 84 Miss. 155, and especially, *Railroad* v. *Minor,* 69 Miss. 710, 719, where it was insisted as here that the evidence showed that appellee was barred of recovery by the maxim, *"Volenti non fit injuria,"* and that the peremptory instruction should have been given, and the court while holding that the evidence sustained the defense, held that the question was not presented in the court below, nor such issue tried by the jury, and that the court would not reverse.

The "assumption of risks arising from the negligence of defendent is an affirmative defense which the defendant must plead in answer and sustain by a proper preponderance of the evidence." *Mace* v. *Bodeker,* 127 Ia. 721, 731, 104 N. W. 475; *M. K. & T. R. R.* v. *Jones,* 35 Tex. Civ. App. 584, 589; *Int. G., etc. R. R.* v. *Harris,* 95 Tex. 346, 350; 1 Thompson Com. Neg., par. 368.

The proof shows beyond question the negligence of the master. The lubricator in evidence shows that it was equipped by the manufacturer with a semi-circular shield, fitted in the slot, for the protection of the employe on the engine against explosion of these glass tubes, and, hence, to provide a safe place to work, and that defendant's mechanical department took off, or if taken off by some employe (of which there is no evidence), that defendant replaced this necessary protective shield with a loose wire coil, without any fastenings, and which by an explosion would be blown out, and thus the master did not furnish the appliance with the standard of safety provided by the manufacturer, but substituted an inferior device of its own—made in its own shops—merely this wire coil.

Again, the glass tubes furnished were apparently good, but the master was negligent in furnishing those glass tubes without test of tensile strength, and, then in ignorance of the amount of pressure the tubes would bear, prescribed that this engine might carry one hun-

dred and fifty pounds of steam, and, thereby, that this amount of pressure be put upon this indicator glass tube, and when it exploded under the pressure of one hundred and forty-five pounds and did the injury. *Stafford* v. *Railroad,* 8 Amer. Neg. Rep. 431, is directly in point. There the plaintiff sued for injuries caused by the explosion of a lubricator tube, and recovered a judgment.

And the court there refused to hold that a peremptory instruction should be given and this case is conclusive of the case at bar.

The cases as relied on by appellant, *Jones* v. *Railroad,* 90 Miss. 547; *Clisby* v. *Railroad,* 78 Miss. 937, and *Kent* v. *Railroad,* 77 Miss. 494, are inapplicable.

In *Jones* v. *Railroad,* 90 Miss. 547, cited the appliance was an approved appliance, "neither defective nor unsafe." Here the appliance was defective and unsafe.

In *Clisby* v. *Railroad,* 78 Miss. 937, cited, the appliance was neither defective nor unsafe. They were there proven to be "those in common use, of approved patterns and in reasonably good repair."

In *Kent* v. *Railroad,* 77 Miss. 494, cited, the appliance had been purchased of a reputable manufacturer, was in general use, and had been inspected and approved as sound and the defect was a hidden one, and the appliance as furnished by the manufacturer and according to his standard of safety was used, but here the shield furnished by the manufacturer was removed, and defendant's own device was substituted.

And so we have a case tried on appropriate instructions applicable to the facts, and in which the jury have determined that defendant was guilty of negligence, and that plaintiff was not guilty of contributory negligence, proximately contributing to the injury.

It is hardly necessary to refer to the number of cases, commencing with the Stevens case, holding that it is a rare case of negligence that should be taken from the

jury, and this particularly applies when the question of the master's duty to furnish safe and suitable appliances is in issue, and also whether the plaintiff acted as a reasonably prudent man would act under the circumstances.

If the court, however, should inquire further into this case, then upon the law and facts, the judgment should be affirmed.

· The effort of counsel for defendant was, to show that with knowledge of the risk, plaintiff voluntarily assumed it, and, hence, under the doctrine of the assumption of the risk, plaintiff would be barred recovery.

Under section 193 of the Constitution, the doctrine of the assumption of the risk is entirely changed, viz.: "Knowledge by an employe injured, of the defective or unsafe character of condition of any machinery, ways, or appliances, shall be no defense to any action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars, or engines voluntarily operated by them."

This follows the rule set forth in 4th Thompson's Conn. Neg., § 4614: "The servant does not accept the risk from dangers which arise from the negligence of the master, although the servant knows of the dangerous conditions and continues in the employment notwithstanding such knowledge. According to the theory the ordinary risks of the service are such, and such only, as remain after the employer has used all reasonable means to prevent them; and he is hence liable to the employe for injuries resulting to the employe from risks arising alone from the master's negligence."

There are cited in the note several cases, among them, *McGovern* v. *Railroad,* 125 N. Y. 280; *Frye* v. *Gas Co.,* 94 Mo. 17, holding that the servant does not assume the risk from defects in the plant itself, which the master is bound to make and keep reasonably safe; *Rhoades* v. *Varney,* 91 Mo. 222; *Himrod Coal Co.* v. *Clark,* 197

Ill. 514, affirming 99 Ill. App. 332; *Swenson* v. *Bender,* 114 Fed. 1, wherein it is held that the servant does not assume the risk from the failure of the master to exercise reasonable care in furnishing him a safe place in which to work; *Soley* v. *So. Pac. Co.,* 6 Utah 319, that the failure to use safety frogs is not an ordinary risk of railroad employes, and this court has held that a railroad company is liable for an injury from an unblocked frog.

The foregoing rule does not eliminate the defense of contributory negligence, but the latest interpretation of contributory negligence under this section, and wherein *Railroad* v. *Parker,* 88 Miss. 193, is followed, it is said:

"If knowing the unsafe, defective, or dangerous conditions, the complaining employe be proven guilty of reckless negligence in the use of the appliance at the time of the injury, he cannot recover."

Whether the danger of such use was so imminent and apparent that no man of ordinary prudence would have incurred it, was a question of fact for the jury. Authorities, in *supra,* and *Weirzbacky* v. *Steel Co.,* 94 Ill. App. 400; *Bjorman* v. *Railroad,* 104 Cal. 626, and *Railroad* v. *Knapp,* 176 Ill. 127.

As said in 1 Labatt Master and Servant, 713: "The true test for the determination of the question whether the servant was in the exercise of due care is not to inquire whether he was aware of the defect which caused him injury, but whether that defect rendered the peril of remaining in the service so imminent that he ought to have abandoned it."

And at page 722-3: "The servant's continuance of work with a mere apprehension of possible danger is not such negligence as will bar his action."

And the servant's fear that if he disobeys he will lose his job, is a material factor in determining the assumption of the risk, unless the danger is so great and imminent that an ordinarily prudent man would not risk

it for that sort of job.    1 Labatt Mas. and Serv., sec. 302 (b), page 786 and note.

In *Troxler* v. *Railway Co.,* 124 N. C. 191, it is held, where the defendant fails to furnish proper and safe appliances in common use (as automatic couplers), it is negligence, *per se.*

The maxim of *"Volenti non fit injuria,"* with its limitations, is clearly set forth in *Troxler* v. *Railway Co.,* 124 N. C. 191, *supra.*

The case of *Smith* v. *Baker,* Appeal Cases, L. R. (1891), 325, sets forth clearly the doctrine of *"Volenti non fit injuria."*

That such question is one for the jury, see, also, *Spalding* v. *Flint,* 159 Mass. 587; *Texas Ry. Co.* v. *Reid,* 88 Tex. 439; *Robertson* v. *R. R. Co.,* 160 Mass. 191.

It cannot be maintained that plaintiff was within the exception of section 193, providing, "Knowledge by any employe injured, of the defective or unsafe character or condition of any machinery, ways or appliances, shall be no defence to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars, or engines voluntarily operated by them." First because this exception was not pleaded and the rule is that exceptions must be pleaded.

In *Buckner* v. *Railroad,* 72 Miss. 878, it is said: "The law was that knowledge by an employe of defective appliances which he voluntarily used, precluded his recovery for an injury thus received. The Constitution destroys that rule, and the mere fact that the employe knew of the defect, is not a bar to recovery."

In the *Emerson case,* 88 Miss. 598, Conductor Emerson was "in charge of" the engine. He was directed to put them on the track and that order meant to place them in a place of safety, and in so doing he was in control and management of them, and they were committed to his charge in this work, and even then the

liability of the railroad company was denied because of his contributory negligence.

"A . . . thing committed or intrusted to the care, custody or management of another," is defined in Webster's International Dictionary to be a "charge." Hence "in charge of" dangerous or unsafe cars would be those "committed or intrusted to the care, custody or management" of the conductor or engineer.

This is applicable to that class of cases governed by *Ill. Cen. R. R.* v. *Bowles,* 71 Miss. 1003, and which covers the class of disabled cars being carried as disabled cars or engines from one point to another, and which are under the direction as to their movement and the necessary precaution to be taken under the direction of "in charge of the conductor or engineer."

Anderson, J., delivered the opinion of the court.

Appellee, Woodruff, sued the appellant, the Yazoo & Mississippi Valley Railroad Company, for personal injuries, and recovered a judgment for ten thousand dollars, from which judgment the railroad company prosecutes an appeal to this court. The material facts are as follows:

At the time of the injury Woodruff was an engineer on the Woodville branch of the Yazoo & Mississippi Valley Railroad, running from Woodville, in this state to Slaughter, La. The injury complained of was caused by the explosion of a glass tube in the lubricator, which latter was a part of the engine, and attached to the rear end of the boiler, to the left of the engineer's seat, and to the right of the fireman's and consisted of four glass tubes, about four inches in length and three-eighths of an inch in diameter, one of which fed oil into the right cylinder of the engine, one into the left, one into the air pump, and the fourth indicated the amount of oil in the lubricator, and all were guarded against injury from explosion by a cover of spiral wire; spaces

being left between the wires, so that the engineer could
see whether the oil had been exhausted. At the time
of the injury the engine was standing still. Woodruff,
while sitting on his seat in the cab, reached across to
his left to get an oil can, which brought his face near
the lubricator, and while in that position one of the
tubes exploded, throwing the glass and hot oil into
his face and eyes, which resulted in the loss of one eye
and other injuries. The lubricator was what is known
as the "Nathan No. 8." Woodruff had been an engineer
for twenty-one years—two years on the Queen & Cres-
cent System, and nineteen years on the Yazoo & Miss-
issippi Valley—and during his experience as an engi-
neer had used a Bull's Eye lubricator, a Detroit, and a
Nathan No. 8. Glass tubes in all these lubricators ex-
plode at times, and the engineer carries along a supply
in order to replace such as explode. Woodruff testified
that one had exploded on this engine two or three
months previous to the explosion which caused the in-
jury, and such explosions had often occurred in his ex-
perience. The Nathan No. 8 is sent out by the manu-
facturer with a guard for the glass tubes, called in the
testimony a "cup," and is made of a metal-like tin, is
circular in shape, and surrounds the glass tube, and
has small slits in it, through which the engineer can
look and see the gauge of the oil. The purpose of this
guard is to hold as much of the glass and oil as possible
in case of explosion, to prevent injury to employes.
For some reason, on the Yazoo & Mississippi Valley
Railroad, this guard is not used to a very great extent,
being replaced at the shops with a spiral wire guard,
like the one on the lubricator in question when it ex-
ploded. Woodruff showed by his own testimony that
the Bull's Eye lubricator is considered the best and
safest; that the Nathan No. 8 is reasonably safe, when
the glass tubes are covered with the guard sent out by
the manufacturer, which costs only a few cents, but

without such guard and with the spiral wire guard, it is unsafe and dangerous; that he had used the spiral wire guard for years, as well as the other, and he knew that the former caused, the lubricator to be an unsafe dangerous appliance; that, so equipped, he voluntarily operated his engine. The court refused a peremptory instruction to the jury to find a verdict for the railroad company, and also an instruction to the effect that they would find a verdict for the railroad company, even if they believed from the evidence the lubricator in question was defective and unsafe, provided it was known to Woodruff, and he operated the engine voluntarily with such knowledge.

The single question is (all other assignments of error having been withdrawn) whether the court below erred in refusing the peremptory instruction for the railroad company, which involves the question whether, taking all the testimony in the case, and every reasonable inference to be drawn therefrom, to be true, does it tend to establish liability on the part of the railroad company? Conceding that the engine which caused the injury was unsafe and dangerous, it is contended for the railroad company that, notwithstanding, there is no liability; that there was no issue of fact for the jury, because Woodruff's own testimony, which is uncontradicted, shows that he knew of such defective condition of the engine, and voluntarily operated the same.

That part of section 193 of the Constitution of 1890 bearing on this question is in this language: "Knowledge by an employe injured of the defective or unsafe character or condition of any machinery, ways, or appliances, shall be no defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars, or engines voluntarily operated by them." Section 4056, Code 1906, contains a rescript of this clause to the Constitution, except there is interpolated, "or of the improper loading of cars,"

which has no effect on the question involved.   In con-
struing this section of the Constitution, in *I. C. Railroad*
v. *Guess,* 74 Miss. 170, 21 South. 50, the court used this
language: "Section 193 of the Constitution, and also
section 3559 of the Code, brought forward in the amend-
ment of March 11, 1896, expressly except engineers
and conductors in charge of dangerous or unsafe cars
or engines, voluntarily operated by them, from the pro-
vision that knowledge by an injured employe of the
defective or unsafe character or condition of machin-
ery or appliances shall be no defense to an action for
an injury caused thereby.   This exception, applied to
engineers and conductors, was manifestly incorporated
on grounds of public policy for the protection of human
life."   And in *Buckner* v. *Railroad Company,* 72 Miss.
873, 18 South. 449: "The law was (before the adoption
of section 193 of the Constitution) that knowledge by
an employe of defective appliances, which he voluntarily
used, precluded his recovery for an injury thus receiv-
ed."   And in *Y. & M. V. Railroad Company* v. *Parker,*
88 Miss. 193, 40 South. 746: "The exception referred
to (in section 193 of the Constitution) is applicable sole-
ly to conductors and engineers, as those terms are gen-
erally understood.   The reason for the exception was
the hope of instilling into the minds of the specially
excepted operatives, a feeling of extra caution, by deny-
ing them the right of recovery, which was expressly
granted to other employes who might operate other
machinery with full knowledge of its dangerous and de-
fective condition.   This provision of the Constitution
was based upon grounds of public policy,   and was
designed for the protection of human life, so often solely
dependent upon the care, caution, and skill of engineers
and conductors."

It is clear that this case stands as if the clause of
section 193 of the Constitution under consideration had
never been adopted; for engineers and conductors, by

its very terms, are excepted from its operation as to injuries done them by "dangerous or unsafe cars or engines voluntarily operated by them." This exception declares the common law rule, under the conditions named, which theretofore applied to all employes, and was that knowledge by an employe injured of the defective or unsafe character or condition of any machinery, ways, or appliances was a defense to an action for injury caused thereby, when voluntarily used by him. In *Ballard* v. *Miss. C. Oil Co.,* 81 Miss. 507, 555, 34 South. 533, 548 (62 L. R. A. 407, 95 Am. St. Rep. 476), the court says: "We are clearly of the opinion that the stepladder furnished the deceased employe, Ballard, was a wholly unsafe and dangerous appliance; but it is equally clear that he had knowledge of its dangerous character. Under the common law his suit would therefore fail." The rule is too well settled to need further citation of authorities; and, applied to the case in hand, the facts shown by Woodruff's own testimony make out a perfect defense for the railroad—that the defective condition of the engine was known to him, and with such knowledge he voluntarily operated it; that this spiral wire guard (the only unsafe appliance shown) was in extensive use by the railroad, and had been for a long time, and he knew as much about its defects as the company itself, and with such knowledge voluntarily used it.

It is contended for appellee that the defense of assumed risk was not presented in the court below, and therefore will not be entertained here. Plainly, the question was squarely presented by the testimony, and the peremptory instruction, and instruction No. 9, to the effect that the jury should find for the defendant, if plaintiff knew of the defect and voluntarily operated the engine, asked on behalf of the defendant and refused by the court. And it is contended, further, that the defense of assumed risk is an affirmative one, and should therefore have

been pleaded specially, which was not done. This is the general rule, but has no application to this case; for the defense relied on was developed by appellee's own testimony in his effort to make out his case. In *Mc-Murtry* v. *Railroad Co.,* 67 Miss. 601, 7 South. 401, and other cases following it, the court holds that, where contributory negligence is shown by plaintiff's own proof, it will avail the defendant, and it is no objection to the defense that it was not specially pleaded. This principle applies with equal force here.

It follows, from these views, that the court below erred in not giving the peremptory instruction asked on behalf of the railroad.

*Reversed and remanded.*

MAYES, C. J. (dissenting).

My conviction that this case should be affirmed is so strong that I feel compelled to dissent. The whole court agrees that the case made by appellee was one in which no peremptory instruction was proper, unless section 193 of the Constitution of 1890 (§ 4056 of the Code of 1906; ch. 194, p. 204, Laws 1908), has application. In my opinion section 193 of the Constitution is in no way involved in this case, since it clearly appears that the defective appliance rendered the engine neither dangerous or unsafe. By section 193 of the Constitution, every employe of any railroad corporation—the engineer, conductor, brakeman, flagman—all are given the same rights and remedies for injuries sustained by them from the act or omission of the corporation, or its employes, as is allowed by law to other persons not employes, etc., save in the single exception made as against engineers and conductors, which I shall now notice. Equality of right as against the railroad corporation is established as to all employes, except as to conductors and engineers voluntarily operating dangerous or unsafe cars or engines with knowledge; and this was not the case here. It is

stated that Woodruff operated this engine knowing of the defect which caused his injury, and is therefore precluded from recovery under section 193, which provides that "knowledge by an employe injured of the defective or unsafe character or condition of any machinery, ways, or appliances shall not be a defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars or engines voluntarily operated by them." The particular defect in the engine which caused his injury was a lubricator. The engine which he was operating at the time was complete in all its parts, save this one defect. The testimony shows that it was quite common. for these lubricators to explode, so much so that engineers carry a surplus in the cab in order to replace them when they break. The testimony utterly fails to show that this defective lubricator made the engine dangerous or unsafe for operation.

Before an engineer or conductor can be denied the right under this section to recover for an injury so sustained by him, it must be shown that the defect made the cars or engine unsafe or dangerous. This is what section 193 plainly says. We must suppose that every word in the Constitution has some meaning, and that the words employed to express the will of the convention were used advisedly. The section says that "knowledge by an employe injured of the defective or unsafe character or condition of any machinery," etc., "shall be no defense," etc., "except as to conductors or engineers in charge of dangerous or unsafe cars," etc. Note that in the exception it does not say that an engineer or conductor shall not recover if they operate merely defective cars, but dangerous or unsafe cars; and this engine was neither, in so far as it stood as a menace to human life or limb. It is my judgment that, under section 193 of the Constitution, every employe stands in the same attitude towards the railroad company, as to his rights and

remedies, when injured by the act or omission of the company, as all other persons not employes; the single exception being that neither the conductor nor engineer shall recover for an injury, where he knowingly operates a car or engine that is dangerous or unsafe, but that such persons are not precluded from recovery when they knowingly operate a defective car or engine in no sense dangerous or unsafe for use.