ST, LOUIS & S. F. R. CO. *v.* GUIN.

[68 South. 78.]

1. MASTER AND SERVANT.   *Injury to servant.   Contributory negligence.   Constitutional provision.   "Conductor."   Assumption of risks.   Servant under direction of superior.   Defective appliances.   Railroad engine.*

   Under section 193, Constitution 1890, providing that knowledge of railroad employees of the defective condition of appliances, shall constitute no defense to an action for injuries, except as to "conductors" and engineers, plaintiff whose actual position was that of foreman in charge of a night switching crew, under the immediate direction of a yardmaster, was not a "conductor" under this section of the constitution, though called such, nor was the yardmaster a conductor. So that plaintiff who was injured while on duty in the railroad yards was entitled to recover.

2. MASTER AND SERVANT.   *Assumption of risks.   Servant under direction of superior.*

   Where plaintiff, a yard foreman, was acting, when injured, under the orders of his superior, who had the right to control his services, the doctrine of assumption of risks did not apply.

3. MASTER AND SERVANT.   *Defective appliances.   Railroad engine.*

   A railroad company is under the duty to at least exercise reasonable care to furnish a reasonably safe engine, and where a foreman, in charge of a night switching crew, was injured by an engine of the railroad company which was defective and dangerous and known to be so, the company was liable.

APPEAL from the circuit court of Lee county.

HON. CLAUDE CLAYTON, Judge.

Suit by E. T. Guin against the St. Louis & San Francisco Railroad Company. From a judgment for plaintiff, defendant appeals.

This is an appeal from a judgment for ten thousand dollars for injuries received by appellee while in the employ of the appellant railroad company. The opinion states the facts. On the trial the court below gave the following instructions at the request of the plaintiff:

"(1) The court charges the jury that the railroad company is responsible for injuries to a servant brought about by its own negligence or misconduct, and the law is imperative in demanding that railroad companies shall furnish their employees engaged in the hazardous work of coupling and pushing cars safe and sufficient appliances.

"(2) The court charges the jury that it is the duty of the railroad company to furnish its servants and employees a reasonably safe place to work, and is under a duty to furnish such servants or employees with materials, tools, or appliances suitable for the performance of the service required of them.

"(3) The court charges the jury that it is the duty of the railroad company to furnish its servants and employees safe machinery and appliances with which to work, and a failure so to do is negligence on the part of the company.

"(4) The court charges the jury that, if they find for the plaintiff, then you should award such damages as the evidence shows he has suffered, not exceeding the amount named in the declaration, and in estimating such damages you may take into consideration the permanent injury to the plaintiff, if any, the shock to his system, if any, his physical and mental pain and suffering, and a fair recompense for loss of what he might otherwise have earned, and has been deprived of the capacity for earning, by reason of the injury.

" (5)   The court charges the jury that, even though they may believe from the evidence that plaintiff placed himself in an unsafe place and was thereby guilty of contributory negligence, still this does not of itself bar a recovery, but it simply goes to the jury in mitigation of the damages."

*J. W. Buchanan,* for appellant.

The law, as I understood it for years prior to the statute doing away with the doctrine of fellow-servant and putting employees on the same footing with others, when an injury to them occurred by the negligence of the railroad company, recognized fully the assumption of risks incident to his employment when he entered the service of the railroad company.   One of the risks incident to the employment was that the railroad company would not be liable for the negligence of a fellow-servant, and again, where an employee was injured by the defective or unsafe character or condition of machinery, ways or appliances, or the improper loading of cars, when he knew by experience or otherwise of the character and condition of the machinery, ways and appliances, and continued in the service after his knowledge of these defects.

Believing, as we did, that this statute did not change the law, so far as conductors or engineers in charge of dangerous or unsafe cars or engines, when voluntarily operated by them, we filed a plea setting up the fact that the appellee stood in the relation of conductor as foreman of the engine and night yardmaster at the time of this injury.   Besides, the appellee, in his complaint, states that he was yard conductor, and engine foreman, and the evidence all shows that the foreman of the engine was in control of the crew, and bore the same relation to the crew as a conductor bears to the crew when on the line of road.

The statute certainly meant something when it is said that "knowledge of an employee injured by the defective or unsafe character or condition of any machinery, ways or appliances, or of the improper loading of cars, shall not be a defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars or enginees voluntarily operated by them."

We submit that, under this statute, admitting that the engine was defective when the appellee was attempting to move it—and it is in evidence and not denied that he knew the exact condition of this engine—and if he operated or attempted to operate this engine in its then condition, we submit that under the law he assumed all the risk incident to the operation of this defective engine; and we submit that the demurrer to this plea should not have been sustained, and that appellee should have been required to answer the same, and this matter submitted either to the court or to the jury as to whether or not there was any liability for the injury received by the appellee.

It seems that the court below and the attorneys for appellee from the demurrer filed to our second plea, and the charges of the court for the appellee, must have confused contributory negligence and the assumption of risk.

That there is a well understood difference between assumption of risk and contributory negligence has been declared by the supreme court of the United States and by the federal courts in many cases. *Railroad* v. *McDade*, 191 U. S. 68; *Schelmmer* v. *Railway Co.*, 220 U. S. 595; *Randall* v. *B. & O. R. R.*, 109 U. S. 478; *Tuttle* v. *Railway Co.*, 122 U. S. 189; *Southern Pac. Ry. Co.* v. *Sealy*, 152 U. S. 145.

The court of appeals for the sixth district has repeatedly noticed the difference between contributory negligence and assumption of risk. *Nelson* v. *Southern Ry.*,

158 Fed. 92, 85 C. C. A. 560; *Railway* v. *Hennessey,* 96
Fed. 713, 38 C. C. A. 307.

To the same effect are the other adjudications of the
federal courts. *Crookston* v. *Boutin,* 149 Fed. 680, 69
C. C. A. 360; *St. Louis Cordage Co.* v. *Miller,* 126 Fed.
495, 61 C. C. A. 477; 11 Bailey on Personal Injury, sec.
354; *Railroad Company* v. *Penn,* 191 Fed. 682, and *Nar-
ramore* v. *Cleveland, C. C. & St. L. Ry. Co.,* 96 Fed. 298,
301, 37 C. C. A. 499, 501, 48 L. R. A. 68.

I call the court's attention to the foregoing authorities
to show that the assumption of risk was not abolished
by the Employers' Liability Act of 1908. I do this as
we find that attorneys in these cases claim that they are
seeking to make the railroad company liable under the
Employers' Liability Act on the theory that the assump-
tion of risk was abolished by said act, and I quote these
authorities to meet this supposed objection.

In the case at bar we submit that the statute of 1908
makes an exception as to conductors and engineers who
voluntarily operate defective appliances, and relieves
other employees from the assumption of risk.

We hold that under the Employers' Liability Act the
appellee in this case assumed the risk. We hold that un-
der the laws of Mississippi, as modified by the Code of
1906, and Acts of 1908, the law remains, as far as en-
gineers and conductors are concerned, the same as the
old law, and rather, the common law.

I call the court's attention to the case of *Hatter* v. *R.
R. Co.,* 69 Miss. 647, to an opinion by Justice COOPER in
regard to the assumption of liability. The federal court
decisions referred to before, show in what cases the
employees assumed the risk, regardless of whether they
were conductors or engineers, but in the case at bar we
assume that the statute relieves conductors and engi-
neers from the assumption of risk except in the cases
mentioned in said act.

*Geo. T. Mitchell,* for appellee.

The sole purpose of appellant in its second plea, as admitted by counsel in their brief, was to hold appellee, as a conductor, within the provisions of that section of the Constitution above cited. Counsel wholly misconceives the purpose of the makers of the Constitution in inserting that most wholesome provision therein, for it is quite evident that their purpose and intention was to cause engineers and conductors to be more careful, and to prohibit them from knowingly operating unsafe cars and engines under penalty of being barred from recovery in case injury happened to them. This provision in our Constitution was inserted on the ground of public policy, more especially for the protection of the lives of passengers. *Railroad Company* v. *Guess,* 74 Miss. 170.

This court, in the case of *Railroad Company* v. *Parker,* in holding that part of the Constitution did not apply to a section foreman, in speaking through Judge TRULY, says: "The exception referred to is applicable solely to "conductors and engineers" as those terms are generally understood. The reason of the exception was the hope of instilling into the minds of the specially excepted operatives a feeling of extra caution, by denying them the right of recovery which was expressly granted other employees who might operate other machinery with full knowledge of its dangerous and defective condition. This provision of the Constitution was based upon grounds of public policy and was designed for the protection of human life, so often solely dependent upon the care, caution and skill of engineers and conductors. The very terms of the constitutional provision that knowledge of such defective or dangerous condition should constitute no defense, except as to certain named classes, necessarily conveys the intention of the law not to permit such knowledge to defeat recovery by others. We cannot assent to the contentions that a section fore-

man in charge of a hand car is a conductor within the meaning intended to be coveyed by the Constitution." *Railroad Company* v. *Parker*, 88 Miss. 193; *Railroad Company* v. *Woodruff*, 53 So. 687.

It is, therefore, not left in doubt as to what the meaning of the makers of our Constitution was with reference to that part of section 193, above referred to. Appellee was in no sense a conductor or engineer in charge of dangerous or unsafe machinery, ways, or appliances, and any knowledge he had of the defects in the machinery, ways, or appliances used on the occasion of the injury, affords no defense to the Railroad Company. There could be no assumption of risk on his part on account of such knowledge, and, therefore, the court was correct in sustaining the demurrer to their second plea.

A considerable portion of the brief of counsel for appellant is devoted to a discussion of the decisions of different courts holding that there is a difference between assumption of risk and contributory negligence. I shall not consume the time of the court in replying to this, for it can certainly have no bearing upon the question now before this court. Under section 193 of our Constitution and our statutes extending the provisions of same, the doctrine of assumption of risk is practically abolished in so far as employees operating dangerous machinery is concerned. So jealous is the law for the safety of employees coming within the provisions of the Constitution, and so eager are the lawmakers in requiring the masters to furnish their employees with safe and suitable machinery and implements, that knowledge of defects in any machinery or implements furnished the employee no longer constitute a bar to recovery, except as to conductors and engineers, as those terms are generally understood. The provisions of our Constitution and subsequent statutes were enacted to apply to just such cases as the one now before the court.

While counsel for appellant in their notice under the general issue charge that appellee was guilty of gross

contributory negligence at the time of the injury, yet they very frankly state, in view of the testimony in the case, in the last two paragraphs of their brief, under second assignment of error, that they base their right to a peremptory instruction not on the ground of contributory negligence, but on the ground of assumption of risk, under contract of employment of the appellee. They further frankly state that in our state contributory negligence as a defense in bar is abolished. I submit that no contract of employment can annul, or set aside, the provision of our Constitution in this regard.

COOK, J., delivered the opinion of the court.

Appellant states the case before us in this way:

"This was a suit on the part of the appellee against the appellant to recover damages for injuries received while he was yard conductor in the yards of the appellant at Armory, Miss. Appellee alleges that R. G. Trickett, who was also in the employ of the appellant as yardmaster in said yards, was a superior agent and officer to the appellee. The declaration further alleges that the appellant failed to furnish appellee a safe and suitable place to work, and failed to supply safe and suitable tools to work with, and competent and efficient employees with whom to work. There are three counts in the declaration, all of which allege about the same grounds for recovery.

"To this declaration appellant first pleaded the general issue, and in its second plea it alleges that the appellee, employed as foreman of the switch engine in the yards, was also night yardmaster, and had charge of all work done in the yards at night with the engines; and the appellant further alleges that the appellee was not entitled to recover, because the injuries received were brought about by matters and things the risk of which he had assumed in entering the employ of the appellant, while discharging his duties as switch foreman

and yardmaster. The appellant further gave notice under the general issue of its defense, alleging that the injury was caused by the gross negligence on the part of the appellee, alleging that there was a safe way to do the work, and that he adopted the dangerous and unsafe mode of doing this work, and that if he had adopted the safe and sane method no injury could have happened to him.

"Appellee demurred to the second plea of appellant, on the ground that it was no defense to this cause of action, which demurrer was sustained. To the sustaining of the demurrer the appellant excepted to the ruling of the court. The case went to trial on issue joined, and the jury rendered a verdict of ten thousand dollars in favor of the appellee. The appellant thereupon made its motion for a new trial. The causes for the motion are set out in the record. The court overruled the motion for a new trial, to which the appellant then and there excepted, and appeals its case to this court."

The main ground for reversal seems to be that inasmuch as appellee was a conductor "in charge of dangerous and unsafe cars, or engines," and inasmuch as he knew of the dangerous and unsafe character of the cars and engines, and "voluntarily operated them," he cannot claim the benefit of section 193 of the Constitution, and the statutes based on said section. It is true that the railroad company gave to the employees filling the job in question the title of "conductor of the yards," but we do not think that there was much significance in the name. Whether he was a conductor in the constitutional sense must be determined by what the term "conductors and engineers" was commonly understood to mean at the time the Constitution was adopted. Judge TRULY, speaking for this court in *Railroad Co.* v. *Parker,* 88 Miss. 197, 40 So. 747, used this language:

"It is perfectly manifest that the exception expressed in section 193 of the Constitution, which, as to conduc-

tors and engineers in charge of dangerous or unsafe engines or cars voluntarily operated by them, still permits their knowledge of the dangerous or defective condition of such cars or engines to be interposed to prevent their recovery for injuries caused thereby, does not apply to other classes of employees; certainly not to a section foreman, as was the appellee in the instant case. *Buckner* v. *Railroad*, 72 Miss. 878, 18 So. 449. The exception referred to is applicable solely to 'conductors and engineers,' as those terms are generally understood. The reason of the exception was the hope of instilling into the minds of the specially excepted operatives a feeling of extra caution, by denying them the right of recovery which was expressly granted other employees who might operate other machinery with full knowledge of its dangerous and defective condition. This provision of the Constitution was based upon grounds of public policy and was designed for the protection of human life, so often solely dependent upon the care, caution, and skill of engineers and conductors. *Railroad* v. *Guess*, 74 Miss. 170, 21 So. 50. The very terms of the constitutional provision that knowledge of such defective or dangerous condition should constitute no defense, except as to certain named classes, necessarily conveys the intention of the law not to permit such knowledge to defeat recovery by others. We cannot assent to the contention that a section foreman in charge of a hand car is a conductor, within the meaning intended to be conveyed by the Constitution.''

Looking to the record in the present case, we find that appellee was the foreman in charge of the night switching crew at Amory. His immediate superior was R. G. Trickett, who was yardmaster, and who usually bossed the switching in the daytime. On the occasion when the injury complained of was inflicted, Mr. Trickett was in charge of the operation of the engine and cars, and gave the orders which were obeyed by appellee,

his subordinate. Neither of these employees were "conductors" in the constitutional sense, and could not be made so by merely calling them conductors.

The supreme court of Wisconsin, in *Hartford* v. *Northern Pacific R. Co.*, 91 Wis. 374, 64 N. W. 1033, in construing a statute providing that "every railroad corporation . . . shall be liable for damages sustained by any employee thereof . . . without contributory negligence on his part, when such damage is caused by the negligence of any train dispatcher, telegraph operator, superintendent, yard master, conductor or engineer, or of any other employee, who has charge or control of any stationary signal, target point, block or switch," said:

"There were at the time of the enactment, . . . and have been for a long period of years theretofore, and have been subsequently, in railroad service everywhere in this country, as a matter of common knowledge, officers known as 'superintendents' in the operating department of the road—general superintendents of the whole line, and superintendents of divisions. The general duties of such superintendents are intimately connected with the movement of trains and cars. Now, it must be presumed that the legislature used the word as it was commonly used. They had in mind the officers of railroads to whom the term was generally applied. The position of superintendent in the railway service is as definitely and well known as that of train dispatcher, telegraph operator, conductor, or engineer. It could not be sincerely claimed that the word 'conductor' can be applied to the foreman of a section gang or of a bridge crew, because he merely conducts or manages the work, or that it can be applied to any other conductor than the one who manages the railroad train; and yet the act does not say 'train conductor.' It could not be sincerely claimed that the word 'engineer' can be applied to the engineer who locates tracks and does en-

gineering work of that kind, or who runs some little stationary pumping engine, or to any one of many other persons connected with railroad service that might properly be called 'engineers'; and yet the act does not say 'locomotive engineer.' And the same illustration might be given in respect to each of the persons specifically named in the act. It may thus be clearly seen that to apply the word 'superintendent' to the mere foreman of a repair shop would be entirely inconsistent with the obvious purpose of the act."

Learned counsel for appellant has filed an able and interesting brief in which he discusses the difference between the doctrine of assumption of risk and contributory negligence, and undertakes to demonstrate that plaintiff below is precluded from recovery because he was aware of the defective and unsafe condition of the engine and knowingly assumed the risk of operating same. We do not believe that this question is involved in this case. It makes no difference that the plaintiff operated the engine knowing it to be unsafe; he does not belong to the class excepted by section 193 of the Constitution.

If he was guilty of contributory negligence, this, of course, under our statute, will not bar a recovery. Plaintiff, according to all the evidence, was acting under the orders of his superior, who had a right to control his services, and the doctrine of assumption of risk does not apply to his case.

The criticism of plaintiff's instructions, if justified, cannot help appellant, for the reason that all agree that the engine was defective and dangerous, and had been so for quite a while before the injury. The railroad company was under the duty to at least exercise reasonable care to furnish a reasonably safe engine, and there is no pretense that this was done.

*Affirmed.*