EASTMAN, GARDINER & Co. *v.* CALDWELL.

(Division B.   Jan. 18, 1937.)

[172 So. 126.   No. 32522.]

Deavours & Hilbun, and C. S. Street, of Laurel, and Homer Currie, of Raleigh, for appellant.

**R. S. Tullos,** of Raleigh, and **McIntosh & McIntosh,** of Collins, for appellee.

Argued orally by **Henry Hilbun,** for appellant, and by **H. M. McIntosh,** for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action against appellant and J. D. Austin in the circuit court of Smith county to recover

damages for a personal injury received by him as the result of a collision at a public crossing between a railroad motorcar owned by appellant and operated by appellee, as appellant's servant, and a school bus operated by Austin. The trial resulted in a judgment in appellee's favor against both defendants, from which judgment appellant alone prosecutes this appeal.

Appellant requsted a directed verdict which the court refused. That action of the court is the principal ground relied on for the reversal of the judgment. We have reached the conclusion that the request ought to have been granted; therefore that question alone will be considered.

Appellant has a sawmill manufacturing plant at Laurel and a large body of timber in Smith county. For the purpose of cutting and removing the timber to its mill it has a line of railroad from Mize in Smith county to its logging camp. Mize is a railroad town. The logging camp is a United States post office. Appellant operates on its railroad between Mize and its logging camp a gasoline motorcar, the car having four wheels, brakes, and a horn; the top and sides of it are described as being similar to those of a school bus. Appellee had operated this car for appellant between Mize and the logging camp for eleven years. He carried the United States mail on it between those places, and for that purpose had been appointed a United States mail carrier and was paid by the government for such services. In addition, he carried back and forth, as a servant of appellant, the latter's employees and express packages, and sometimes passengers other than appellant's employee, and for these services he was paid by appellant. When the collision occurred, appellee was on his regular run. There is a highway running from Mize to Raleigh, which crosses appellant's line of railroad. It was at this crossing that the collision occurred. Appellee was approaching the crossing at the same time as was Austin,

who was driving the school bus; the bus did not stop, as required by section 6124, Code of 1930, before crossing the railroad. The horn and brakes of the motorcar were out of repair, so badly in need of repair, according to appellee's evidence, as to be almost, if not totally, useless; except for that condition, appellee would probably have been able to stop the car before the collision.

Appellee had full knowledge of the condition of the car. He had requested appellant to remedy the defects. Appellant had failed to do so; therefore appellee was voluntarily operating the car with full knowledge of its defective condition. We are of the opinion that the common-law doctrine of assumption of risk applies. Construing section 193 of the Constitution in connection with sections 6154 and 513, Code of 1930, appellee assumed the risk of operating the defective car. He was both engineer and conductor. The applicable provisions of section 193 of the Constitution and of section 6154 of the Code follow:

"Section 193. Every employee of any railroad corporation shall have the same right and remedies for any injury suffered by him from the act or omission of said corporation or its employees, as are allowed by law to other persons not employees where the injury results from the negligence of a superior agent or officer, or of a person having the right to control or direct the services of the party injured, and also when the injury results from the negligence of a fellow-servant engaged in another department of labor from that of the party injured, or of a fellow-servant on another train of cars, or one engaged about a different piece of work. Knowledge by any employee injured, of the defective or unsafe character or condition of any machinery, ways, or appliances, shall be no defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars, or engines voluntarily operated by them. . . . The legislature may

extend the remedies herein provided for to any other class of employees."

"6154. *Fellow-servant rule—abolished as to railroad employees.*—Every employee of a railroad corporation, and all other corporations and individuals, using engines, locomotives or cars of any kind or description whatsoever, propelled by the dangerous agencies of steam, electricity, gas, gasoline or lever power, and running on tracks, shall have the same rights and remedies for an injury suffered by him from the act or omission of such railroad corporation or others, of their employees, as are allowed by law to other persons not employed. Knowledge by any employee injured of the defective or unsafe character or condition of any machinery, ways or appliances, or of the improper loading of cars, shall not be a defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars or engines voluntarily operated by them."

Section 513 of the Code provides that: "In all actions for personal injury to an employee, and in all actions where such injury results in death, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death results in whole or in part from the negligence of the master; except as to conductors, or locomotive engineers, in charge of dangerous or unsafe cars or engines voluntarily operated by them."

It will be observed that the last clause of section 193 of the Constitution provides that "the legislature may extend the remedies herein provided for to any other class of employees." Section 6154, as it now stands, was adopted in 1908 (chapter 194, Laws 1908) in pursuance of that constitutional grant; it was amendatory of a previous statute. In all substantial respects it is a rescript of section 193 of the Constitution, except these words were added, "and all other corporations and in-

dividuals, using engines, locomotives or cars of any kind or description whatsoever, propelled by the dangerous agencies of steam, electricity, gas, gasoline or lever power, and running on tracks.'' Prior to the adoption of chapter 194, Laws 1908, our court held that section 193 of the Constitution applied alone to conductors and engineers on the usual commercial railroads; that it has no application to conductors and engineers on logging roads. Yazoo & M. V. R. Co. v. Parker, 88 Miss. 193, 40 So. 746, and Bradford Construction Co. v. Heflin, 88 Miss. 314, 42 So. 174, 12 L. R. A. (N. S.) 1040, 8 Ann. Cas. 1077. Since its adoption, our court has held that a foreman in the yards in charge of a night switching crew, under direction of the yardmaster, was not a conductor, nor was the yardmaster. St. Louis & S. F. R. Co. v. Guin, 109 Miss. 187, 68 So. 78.

In Hunter v. Ingram-Day Lumber Co., 110 Miss. 744, 70 So. 901, the plaintiff was a servant of the lumber company. He was injured while employed in loading a car by means of a steam logger, by reason of the failure of a fellow servant, who was engaged in operating a steam skidder, to give the usual warning signal. The court held that the plaintiff was within the protection of chapter 194, Laws 1908, and was therefore entitled to recover for injuries received by reason of the negligence of a fellow servant. In Edward Hines Lumber Co. v. Harriel, 171 Miss. 670, 158 So. 146, the servant was employed on a skidder under the supervision of a skidder foreman. He was a drum operator for the purpose of drawing logs from the woods to the master's logging tracks. The court held that he was not ''an engineer in charge'' within the meaning of section 193 of the Constitution and section 6154 of the Code.

The provision added to section 193 of the Constitution by chapter 194, Laws 1908, is very broad and comprehensive. It does not stop with railroad corporations, but includes all other corporations and individuals us-

ing engines, locomotives, or cars of any kind or description, propelled by the dangerous agencies of steam, electricity, gas, gasoline, or lever power, and running on tracks. It does not take any broadening of the language of the statute to include the motorcar here involved; it is expressly covered.

Section 513, Code of 1930, expressly reserves from the abolition of the common-law assumption of risk doctrine conductors or locomotive engineers in charge of dangerous or unsafe cars or machinery voluntarily operated by them. The purpose of the Legislature was to make this statute fit in with and carry out the policy embodied in section 193 of the Constitution and section 6154 of the Code. The assumption of risk doctrine is simply this: Where a master furnishes his servant an instrumentality with which to do his work, and the instrumentality is so defective and unsafe as to be dangerous to the life and limb of the servant, and the servant, fully aware of the defect and the danger, voluntarily uses the instrumentality and is injured because of the defect, there is no liability on the part of the master; the servant assumes the risk. Yazoo & M. V. R. Co. v. Woodruff, 98 Miss. 36, 53 So. 687, 57 So. 914; Illinois Cent. R. Co. v. Guess, 74 Miss. 170, 21 So. 50; Yazoo & M. V. R. Co. v. Parker, supra.

Reversed and judgment here for the appellant.