## Wytheville.

N. & W. R. R. Co. v. WILLIAMS.

### June 23d, 1892.

1. RAILROAD COMPANIES — *Passengers* — *Employees* — The difference between the degree of care which such companies owe to a passenger and to an employee is vast. As to the former, they are held liable for the slightest negligence; as to the latter, they are bound to use only ordinary care.

2. IDEM—*Case at bar.*—Plaintiff, an engineman, started his train from a station, and ran 730 yards, attaining a speed of twenty or twenty-five miles an hour, when he saw freight-cars about forty yards ahead, which had been stored on a "passing siding," but had got loose and moved down on the main track. Plaintiff reversed his engine and jumped, breaking his leg. The freight-cars had displaced the switch, so as to expose the danger signal, which plaintiff might have seen, as well as the cars, in ample time. Besides, he was approaching a bridge in course of construction at a forbidden rate of speed. HELD:

    He was not entitled to recover, as he was guilty of contributory negligence.

3. IDEM—*Negligence—Presumption.*—In case of an employee the court will not presume there was negligence in using the "passing siding" for storing cars.

4. IDEM—*Rule—Absence of signal.*—Plaintiff's contention, that fog prevented him from seeing the danger signal, was untenable, because of the rule that "a signal imperfectly displayed, or the absence of a signal where one is usually shown, must be regarded as a danger signal."

5. IDEM—*Double track—Bulletins.*—The road was being double-tracked when the accident occurred, and bulletins were posted calling attention to the importance of keeping his train under control at such points: HELD:

    Equivalent to actual notice.

Error to judgment of circuit court of the county of Montgomery, rendered in an action for personal injuries, wherein

one M. D. Williams was plaintiff and the Norfolk and Western Railroad Company was defendant. The verdict and judgment being adverse to the company, it obtained a writ of error and *supersedeas.* Opinion states the case.

*Phlegar & Johnson,* for plaintiff in error.

*T. N. Williams,* for defendant in error.

LEWIS, P., delivered the opinion of the court.

The plaintiff below, the defendant in error here, was an engineman in the employ of the defendant company. On the 1st of July, 1890, about 4 o'clock in the morning, the passenger train upon which he was employed left Radford for Roanoke, and arrived at Big Spring, an intermediate station, about an hour afterwards.

At the latter station there were two sidings—one on the south side of the main track, known as the local or storage siding ; the other on the north side, which was a passing siding. The east end of this siding connects with the main track at a point about 720 yards east of the depot building, and less than 200 yards beyond that point a railroad bridge was being built. The company was also, at the same time, double-tracking its line between Radford and Roanoke. This work was being done by contractors.

The day before the accident seven cars, loaded with stone, to be used in the construction of the bridge just mentioned, were put upon the passing siding. They were put there because the local siding was full, and were left standing there "in good, safe condition, with brakes set on all of them." This was between 10 and 11 o'clock A. M. That evening, about 7 o'clock, they were inspected by the depot agent, who had control of the sidings, who found the brakes

"tight and all right." The next morning, about ten minutes before the accident, they were still standing at the same place. They, however, by some means, not accounted for by the evidence, moved off the siding on to the main track, just before the arrival at Big Spring of the plaintiff's train.

The switch was set at the time for the main line, so that the effect of the passing of the cars from the siding was to "split the switch," as it is called. On this switch there is a signal which shows white and red. The white, when displayed, indicates that the track is clear; the red signifies danger, and is a signal to engineman *to stop*. The switch is so designed that when "split" the signal changes, so that when the cars passed from the siding to the main track, the white signal was changed to red, and so remained until after the accident.

When the plaintiff approached the station at Big Spring he "blew for the signal"—*i. e.*, the semaphore signal, which is a paddle in the daytime and a light at night. In answer to this a white signal was shown, which meant that there were "no orders." The train, however, stopped at the station to let off a passenger, and in a few seconds started on its way eastward.

The plaintiff, in running from the station to the point at which he first observed the cars on the main track—a distance of about 730 yards—attained a speed of from 20 to 25 miles an hour. After leaving the station, and before reaching the obstruction, he had to pass the switch at the eastern terminus of the passing siding, upon which, as already stated, there was displayed a red or danger signal. Yet he seems not to have observed the signal at all, and did not see the cars, he says, which were standing a short distance east of the switch, until the train had gotten within 30 or 40 yards of them. He then reversed his engine and jumped to the ground, and, in doing so, broke his right leg. The engine soon collided with the cars and stopped.

The evidence shows, and the fact is undisputed, that had the plaintiff remained at his post and done his duty, he would, in all probability, not have been injured. He contends, however, that he was justified in jumping, as he did, because of the perilous situation in which he was suddenly placed by the negligence of the company—that is, in using the passing siding for storage purposes. But there is no evidence to support this theory, and, in the absence of such evidence, negligence on the part of the company cannot be assumed.

There is a vast difference between the degree of care which a railroad company owes to a passenger and to an employee. In the former case the law holds the company liable for the slightest neglect, and requires it to repel by satisfactory evidence every imputation of such negligence; whereas, in the latter case, it is bound to use only ordinary care. It is not the insurer of the safety of its employees, and in an action by an employee the burden of proving negligence is upon the plaintiff.

The absence, therefore, of evidence to prove negligence, or the want of ordinary care, on the part of the company, is decisive of the present case. But we may go further, and say that, even if negligence on its part were established, the result would be the same; for if the company was negligent, then the evidence shows such contributory negligence on the plaintiff's part as to defeat a recovery.

As a witness in the case, he gives as a reason for not sooner seeing the obstruction in his way that the morning was foggy. But his own witness, Blanchard, the conductor of the train, who was in a much less favorable position for seeing ahead, testifies that he saw the cars on the track when the train was at a certain point, which, by actual measurement, subsequently made, was found to be about 400 yards from where the cars were when the collision occurred. When the

train started from Big Spring, he says, he took a seat in the second-class car, when, upon looking out of the window, while the train was on a curve, he saw the cars on the track, and prepared himself for the coming shock.

Another witness testifies that he could see the obstruction at a distance of 250 yards. And the uncontradicted evidence for the defendant shows that, with the appliances at the plaintiff's command, the train could easily have been stopped in a much shorter distance.

We must, therefore, assume that the plaintiff might have seen the threatened danger in time to have avoided it, had he been keeping the vigilant lookout which his responsible position required.

The same remark also applies to his failure to observe the switch signal. And his negligence was just the same, whether in point of fact he could or could not have seen it; for a rule of the company, with which he was familiar, provides that " a signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a danger signal." Hence, if by reason of the fog, or otherwise, the plaintiff could not have seen the signal at the switch, he ought to have remembered the rule, and acted accordingly; but he did not, and rushed headlong, at a rapid and increasing rate of speed, until too late to avoid the collision.

His attention, moreover, had been previously called, by bulletins duly posted, to " the importance of running with trains under *complete control* at all points where contractors are at work between West Roanoke and Big Spring." Yet, heedless of this admonition, and of his duty to the company and to those whose safety had been entrusted to his care, he rapidly approached the bridge under construction by the contractors, near which the cars were standing, and in doing so seems to have lost control both of his train and of himself; for, as he himself testifies, he was " much excited " when he discovered

his danger, and in his excitement jumped from the engine.

It is true he says he does not remember to have seen the bulletin notices. But the evidence shows that they were posted at one or more places where it was his duty, under the rules of the company, as one of the " train-men " on his division, to whom they were addressed, to have seen and read them ; and this, in contemplation of law, was, for the purposes of the present case, equivalent to actual notice.

It is needless to say more. The case, upon the evidence, even when viewed, as it must be, in the light of the strict rule of a demurrer to evidence, is so clearly with the defendant, that we deem it unnecessary to consider any other question arising upon the record.

JUDGMENT REVERSED.