# JUNE, 1911.

T. J. ANDERSON v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS.

No. 2475. Decided June 7, 1911.

**Master and Servant—Contributory Negligence—Case Stated.**

Plaintiff, the foreman of a fencing crew in the service of defendant railway and having charge of a hand car carrying the crew from their place of labor, ran the same upon an open switch where he was injured by its derailment. The switch had been opened to permit the entry of a train upon the siding and left in that condition during an unexpected delay of the train there, without stationing one of the train crew at the switch as the rules of the company required; but it was provided with a target indicating the position of the switch, by a glance at which while approaching it plaintiff might have known that the switch was open. He sought to excuse his failure to observe the position of the switch target by the fact that he was misled into assuming that the switch was closed by the absence of the train man whom, if it were not, the rules required to be stationed there, and his attention attracted to guarding against other dangers from persons on the track and from the presence ahead of a train upon the track, liable to back in his direction while he was crossing some intervening bridges where he could not avoid it by removing his car from the track. Held, that the question whether the plaintiff was negligent in failing to observe the position of the switch target in approaching it was, under all the circumstances, one of fact for the jury, and the appellate court, on reversing a recovery by plaintiff, was not justified in rendering judgment for defendant on the ground that contributory negligence was conclusively shown. Murphy v. Galveston H. & N. Ry. Co., 100 Texas, 490, followed. (Pp. 341-346.)

Error to the Court of Civil Appeals, Sixth District, in an appeal from Titus County.

Anderson sued the railway company and obtained judgment. It was reversed on defendant's appeal and judgment rendered in its favor. Plaintiff then obtained writ of error. The case on appeal is reported in 61 Texas Civ. App., 374.

*B. L. Evans, J. P. Copeland* and *L. E. Kenny,* for plaintiff in error. —Not only did appellee have no right to expect that a main line switch would be left open, but his mind and attention, at the time he approached this switch, were absorbed in watching a freight train in front of him on the main line, which he was expecting to back on him at any moment, and in fact he was not sure that it was not then backing. In watching this train ahead on the main line, he was obeying and complying with a written rule of the company, which rule reads as follows: "They must run their handcars and pushcars with great caution, always keeping a lookout for trains." Galveston, H. & N. Ry. Co. v. Murphy, 100 Texas, 490; Galveston, H. & N. Ry. Co. v. Murphy, 114 S. W., 443; Missouri, K. & T. Ry. Co. v. Mayfield, 5 Texas Ct. Rep., 316-319; Galveston, H. & S. A. Ry. Co. v. Butchek, 3 Texas Ct. Rep., 953; San Antonio & A. F. Ry. Co. v. Lindsey, 3

Texas Ct. Rep., 554; St. Louis S. W. Ry. Co. v. Pope, 87 S. W., 534-541; Railway Co. v. Shappine, 118 S. W., 596; St. Louis S. W. Ry. Co. v. Boyd, 119 S. W., 1154.

*Glass, Estes, King & Burford, E. B. Perkins* and *D. Upthegrove,* for defendant in error.—The uncontradicted evidence shows that plaintiff was guilty of contributory negligence in running his car into an open switch in the daytime when by the use of ordinary care he could have and would have discovered said switch was open and could have avoided running into same. Pleasants v. Railway Co., 61 Am. St. Rep., 678; York v. Railway Co., 22 S. W., 1081; Kelley v. Lawrence, 92 S. W., 1161; Railway Co. v. Robinson, 37 Texas Civ. App., 465; Mize v. Railway Co., 105 S. W., 908; Railway Co. v. Anderson, 118 S. W., 1114; Railway Co. v. Johnson, 118 S. W., 1117.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

A judgment of the District Court in favor of plaintiff in error against the defendant in error for damages for personal injuries sustained by him in its service was reversed by the Court of Civil Appeals, and final judgment was rendered in favor of defendant, for two reasons, (1) that there was no evidence of negligence on the part of the defendant, and (2) that the evidence conclusively showed negligence of plaintiff which contributed to his injuries. Of course, one of these propositions must be true to sustain the rendition of final judgment.

The plaintiff was foreman of a fencing gang in the service of the defendant and, with the men under his control, traveled over the road on a handcar as occasion required. Being in North Fort Worth, he was directed by the roadmaster to go to Hodge, a point some miles out, to aid in repairing a part of the road which had been washed out. In going out on his handcar he passed over the main track of the defendant in its yards in North Fort Worth, and by the switch at which later he was hurt. After he went north other employees passed through this switch with an engine from the main track onto a siding leading to the packery, where they were to take charge of a train load of meat to be transported over the road to its destination. Expecting soon to return to the main track, they left the switch open, and this condition continued for several hours on account of their being unexpectedly detained. In the interval plaintiff with his men returned south on the handcar and ran into the open switch, and this caused the injuries to plaintiff on which this action is based. The main track referred to was that in the yards and not the main line over which the freight and passenger traffic was carried on, and it was the contention of the defendant that the leaving of the switch open at that place was entirely proper and in accordance with its rules and customs known to its employees. We shall assume, however, that under all the evidence, this was a question for the jury to decide, and shall confine ourselves to the other contention that plaintiff, by his own negligence, was partly responsible for the occurrence in which he was hurt.

While, as stated, he was foreman of a gang whose employment was to put up fences, and was called on this occasion to do other work, he had had some years previous experience in other branches of rail-

road service, was familiar with the running of handcars over tracks
and switches, and knew of the location of the switch in question.  The
car and the men were under his control and protection and the duty
of keeping a lookout for obstacles to the safe running of the car was
his.  His position was by a brake with which the car could be stopped
and which it was his duty to apply when occasion arose.  On this
occasion he stood there, looking ahead for street crossings, for people
who might be in danger and for obstructions.  At the switch was the
usual target standing seven or eight feet above, and four or five feet
to the right of the track, plainly indicating the condition of the switch.
It was visible for at least one hundred yards to the north.  The plain-
tiff says that he does not believe there was a target on this switch, but
admits that he did not look for or think about one, and this, in our
opinion, is wholly insufficient to raise an issue with other uncontra-
dicted testimony to the fact of its presence.  The condition of the rails
themselves could have been seen for at least forty feet and the car,
which was being moved slowly and carefully, could have been stopped
by plaintiff in thirty feet at most.  About a hundred yards north of
the switch was the crossing of another railroad, where there was an
interlocker at which the car had to be stopped and over which it had
to be lifted by the men.  Neither from this point nor from any other
did the plaintiff look to see the condition of the switch target or of the
rails.  These facts are stated from plaintiff's own testimony.  He says
that his view along the right of way was obstructed by one of the men
on the car standing in front of him but admits that he could have seen
the target, if there, and the condition of the rails at the distances men-
tioned, if his attention had not been diverted from them in the manner
to be stated.  Besides, considering his duty of keeping a lookout re-
sulting from the nature of the position which he held, it could hardly
be admitted as an excuse, if he permitted his view to be thus obstructed
so as to prevent the proper discharge of that duty.  He stated that the
rules and practice were to keep the switches properly set and locked
for the main line, unless a man were stationed at any which might
be open to give warning and that, seeing no man, he relied on this and
did not look at the target or rails, having passed that morning over a
number of switches without harm.  His chief explanation, however,
is that his attention was distracted by a train which stood at the North
Fort Worth depot with its rear towards him.  He first noticed it when
at the interlocker, about four hundred yards away from it.  The dis-
tance between the interlocker and the switch was, as we have seen,
about one hundred yards.  Between the switch and the train were three
bridges 160, 60 and 30 yards long respectively, and plaintiff did not
know but that the train might move back towards him to take a siding
in order to let some other train pass, and that he might, unless care-
ful, be caught on one of the bridge's where he could not get his car out
of the way.  Hence he caused the car to be moved slowly and carefully,
watching the train and being unable at that distance to see whether it
was in motion or not.  But he admits that it would only have acquired
a "flash of the eye" towards the switch to have seen its condition; in-
deed, it is perfectly evident that both rails and target were easily within
the range of his vision as he looked at the train and that his failure

to see them was wholly the result of inattention due to the causes stated. The conclusion can not be avoided, in any reasonable way, that such inattention was, in itself, a failure to perform the duty which, in the place of his employer, he had undertaken to perform, by keeping a proper lookout for the safety of the men and the property under his protection, and that such failure constituted negligence.

This is not the ordinary case of an employee hurt through the neglect of the employer to discharge some of his duties with reference to the safety of the employee while doing his work and to the performance of which it is no duty of the latter to see. Such an employee may assume without investigation that the employer has properly performed his duties, and is not chargeable with contributory negligence for merely pursuing his work on that assumption, until he has learned, or it is so patent and obvious that he ought to have seen, that a danger to him, which in common prudence he ought not to·incur, has arisen from a dereliction of duty on the part of .the employer. Here, the master, if controlling in person the operation of the handcar as plaintiff was, would have been under the affirmative duty of keeping lookout for his employees relying on him for protection. That duty plaintiff assumed, and for any injury to the other employees resulting from his inattention to it, the employer would be as fully responsible as if that inattention were his own. Can it be true that he is also responsible to the delinquent for an injury which but for his dereliction would have been prevented? We can not admit such a proposition. It is true that the duty to keep the lookout is not the absolute duty to see and avoid the danger at all events and under all circumstances. It merely exacts ordinary care commensurate with the dangers and risks attending such operations; the lookout exacted for such things as open switches being such only as is consistent with the discharge of all the duties arising out of the situation. But the duty is an affirmative one to discover, as far as the exercise of the requisite care will allow, the dangers for the avoidance of which it is assumed. It is like that incumbent on locomotive engineers, due allowance being made for the greater dangers and difficulties which surround them. The engineer has to operate and control his engine, and this requires much of his care and attention, but at the same time he is required to keep as vigilant an outlook along the track as is consistent with the proper discharge of all his duties. His attention must at times be turned from objects in front of him and his failure, from such causes, to see things which would otherwise be apparent to his observation is in no sense a failure of his duty. This is fully recognized in many authorities: Houston & T. C. R. R. Co. v. Sympkins, 54 Texas, 615; 5 Thompson on Neg., secs. 5461, 5473; Labatt, Master & Servant, secs. 350, 351; Louisville & N. Ry. Co. v. Hurt, 101 Ala., 34; Hall v. Chicago, etc., Ry. Co., 46 Minn., 439; Norfolk & W. R. R. Co. v. Williams, 89 Va., 165; Illinois C. Ry. Co. v. Guess, 74 Miss., 170.

But it will be seen that this is true either because of some emergency which demands swift action, or because of the performance of some part of the duty which is inconsistent with the exercise, at the same time, of the vigilance along the track. If the·watch can be kept consistently with the doing of everything else that duty demands, the

mere inattention which prevents it can be properly considered nothing but negligence—negligence of a kind into which almost any one may occasionally lapse, for the most prudent persons are negligent at times —but negligence still, the consequences of which the person guilty of it has no right to visit on others.

We have assumed that a jury might find that the duties of other employees of the defendant required them to keep switches like that in question closed and the contentions of counsel for plaintiff involve one that the plaintiff had the right to act on the assumption that this duty had been properly performed and that this switch· was closed. But what was the purpose for which the switch target and the·lookout were required if it was not to enable those performing such duties as that which the plaintiff undertook to avoid the consequences of a neglect on the part of others.

The same argument would apply to any other condition of the track, and would render nugatory those precautions and expedients by which disastrous consequences of the neglect of some are to be averted by the vigilance of others. Commonest experience has demonstrated that, in matters involving so much, it is often unsafe to rely on the perfect performance of duty on the part of one employee, and necessary to interpose successively the vigilance of several in order to insure the safety of the traveling public or of other employees, and one who has undertaken such a duty and, by an omission to perform it, brought injury upon himself is not in a position to demand redress because others, too, have neglected their part in the scheme devised to avert danger. This contention is conclusively answered by the fact that the duty to keep a vigilant lookout required that plaintiff should not neglect to see as far as was practicable whether or not those whose business it was to keep the switch closed had done so. This he admits he could have seen and did not see. There was no emergency and no inconsistent duty which prevented him from seeing. He had all the time he needed to see the switch· and at the same time avoid the train. He was never for a moment, after coming in seeing distance of the switch, under any necessity which forbade or impeded his looking at it.

If one of the other men had been hurt and this were a case in which the trial court had directed the jury that, even if there was no negligence in leaving the switch open, still the defendant would be responsible for the admitted neglect of its foreman under whose protection it had put the other employees to look out for the switch target, could the propriety of the instruction be seriously questioned? We think not, and certainly it will not do to hold the defendant liable to its employee for the same negligent omission that, when imputed to it, makes it liable to others.

The judgment of the Court of Civil Appeals is correct.

## ON MOTION FOR REHEARING.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

This court affirmed a judgment of the Court of Civil Appeals by which that court reversed a judgment of the District Court in favor of Anderson and rendered judgment for the railroad company. Upon

reconsideration of the case we are of opinion that we erred in our former judgment. In the former opinion (in which the writer fully concurred) we said:

"We have assumed that a jury might find that the duties of other employees of the defendant required them to keep switches like. that in question closed and the contentions of counsel for plaintiff involve one that the plaintiff had the right to act on the assumption that this duty had been properly performed and that this switch was closed. But what was the purpose for which the switch target and the lookout were required, if it was not to enable those performing such duties as that which the plaintiff undertook to avoid the consequences of a neglect on the part of others."

The evidence is somewhat conflicting upon the application to the place of the accident of the rule that required, when a train passed through a switch from the main line, that the switch should be closed; if not closed, then a man should be stationed at a certain point near, and opposite to, the switch. There is no dispute as to the existence of the rule nor its requirements, neither is there any doubt of the fact that a train had passed through the switch and was standing upon the side track three or four hundred yards therefrom. The switch was not closed nor was a man stationed near by.

We will not discuss the facts but we conclude that the evidence would sustain a finding by the jury that the rule applied to that place and that the absence of the man justified Anderson in believing that the switch was closed. Anderson was not familiar with the rules which applied to yard limits and the like in the city of Fort Worth, but knew of the rule in question.

The plaintiff was foreman of a construction gang and was going with the handcar heavily loaded, and with the men of his gang on it, to do some work beyond the switch. He was going in on the side-track on which the train stood and there were two bridges between the switch and the standing train. He testified that the train was liable to back down to the switch at any time, passing out on the main line, and he was giving his attention to that train so as to save the handcar from being caught on the bridges where he could not remove it from the track. The jury could have found that, not seeing the man at or near the switch, Anderson relied upon that fact as showing that the switch was closed and that he gave no further attention to other signals which indicated that the switch was open. We conclude that a jury might, upon this state of facts, have found that a man of ordinary prudence might have relied upon the absence of the man as showing that the switch was closed, as the rule required, and, being threatened with a collision with a train running backwards, no further attention would be given to the switch, and that, with his mind and sight so occupied in watching the train, a man of ordinary prudence might have taken no note of the target which indicated that the switch was open. Murphy v. Galveston, H. & N. R. R. Co., 100 Texas, 490, 9 L. R. A., N. S., 762.

In the case cited a handcar with tools and men under the control of Murphy was approaching a station at which a train was standing. The rules of the railroad company required that a train stopped on the

main track be protected by a flagman whose duty it was to place torpedoes upon the track and to remain with them until recalled by a signal that the train was to go on, when he was to take up one of the torpedoes and return to the train. Murphy was sitting on the edge of his handcar with his feet hanging down when the car passed over a torpedo which exploded and injured his leg. If the flagman had been at his post Murphy would have been on the lookout for torpedoes, but, seeing no man with a flag, he relied upon that fact as showing that the duty of removing the torpedoes had been performed. We can not present this view of the facts and law better than was done in the Murphy case in this extract:

"The railroad company having established, by rules promulgated by it, a mode of procedure, under such conditions as existed at the time and place of the accident, Murphy, while discharging his duty, had the right to rely upon the observance of the rules by the trainmen and to act as if the apparent conditions were real, and if Murphy was misled by the negligence of the conductor of the freight train and was thereby injured, the railroad company will be liable. (International & G. N. Ry. Co. v. Gray, 65 Texas, 32; International & G. N. Ry. Co. v. McVey, 99 Texas, 28; International & G. N. Ry. Co. v. Woodward, 26 Texas Civ. App., 389; Galveston, H. & S. A. Ry. Co. v. Garteiser, 9 Texas Civ. App., 456.

The railroad company having established the rule above stated, Anderson had the right to rely upon the apparent fact that the switch was closed, as indicated by the absence of the man whose presence would have given notice that it was open, and whose absence gave notice that it was closed. If the switch had been closed it would have been unnecessary to observe the switch target; being led to believe it was closed, Anderson was not guilty of negligence, as a matter of law, in not seeing the target, for he says his mind and sight were occupied in watching the train.

It is ordered that the judgment of the Court of Civil Appeals, rendering judgment against the plaintiff Anderson, be reversed and that this cause be remanded to the District Court for trial.

*Reversed and remanded.*